THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
HENRY D. SHIPLEY, by his next friend, G. L.
SHIPLEY.

*Action for Personal injuries—Negligence—Prayers and
instructions to the Jury—Admissibility of Evidence.*

In actions for personal injuries, some general instructions are the only
guides practically useful or necessary to be given by the Court; the
rule being that negligence is a question for the jury to decide upon all
the facts and circumstances of each case.

But while this is the general rule, cases may and do sometimes occur,
where the Court is required to declare some glaring act of carelessness
on the plaintiff's part to be in law such contributory negligence as will
prevent a recovery; or, on the other hand, where the proof of negli-
gence on the part of the defendant is so slight and inconclusive in
its nature, as to demand from the Court an instruction as to its legal
insufficiency to prove negligence, in order to prevent the jury from
indulging in wild speculation or irrational conjecture.

Prayers asserting that certain facts amount to negligence, and that upon
finding them the plaintiff cannot recover, and the verdict of the jury
must be for the defendant, necessarily concede the truth of all the
other evidence in the cause, and all legitimate inference therefrom
tending to disprove negligence. And if, independent of the hypo-
theses of fact stated in the prayers, there is proof, from which the jury
might fairly infer absence of negligence in the plaintiff, there is no
error in rejecting them.

A prayer attempting to define what in law amounts to due care and dili-
gence, or the absence of negligence, on the defendant's part, under the
circumstances of the case, will be bad if there are other facts with
inferences legitimately deducible therefrom, on the question of the
defendant's negligence, not alluded to in the prayer.

The appellate Court cannot, in any case, consider what influence the
rejection of one prayer and the granting of another in the presence
of the jury may have had upon their verdict. The jury must in all
cases be presumed to have acted on the law of the case as laid down
by the Court in the instructions given, irrespective of the rejected
prayers on either side.

In an action by a youth to recover damages for a personal injury, the
father of the plaintiff was asked, "How many have you in your

family, and what are your means of support?" On objection to this question and to the answer thereto, HELD:

1st. That so far as the testimony elicited by this question tended to show, that the plaintiff was the son of a mechanic and a laboring man, it was admissible, and a general objection to the admissibility of the whole for any purpose was properly overruled.

2d. But so far as the testimony or any part of it tended to show merely the father's *poverty*, and that he had a large family to support, and was sought to be used for the purpose of influencing the jury to increase, for this *reason* and on *this account*, the damages to be given to the son, it was clearly inadmissible. But the objection should have been more specific, or the defendant should have applied for an instruction confining the testimony to its legitimate purpose.

APPEAL from the Superior Court of Baltimore City.

This action was brought by the appellee to recover damages for an injury to his person, caused by his being caught between two railroad cars of the appellant, and having his arm injured.

In the course of the trial the plaintiff's counsel asked the father of the plaintiff the following question:

" How many have you in your family, and what are your means of support?"

To this question and to the answer thereto the defendant objected; but the Court allowed the question to be put, and the answer, which was as follows, " I am a carpenter; I support myself by my labor, and have a wife and five children,"—to be given to the jury.

This ruling of the Court forms the ground of the appellant's first exception.

In other respects the case is fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*Ferdinand C. Latrobe*, for the appellant.

*R. J. Brent* and *J. L. Brent*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This is an action to recover damages for an injury to the plaintiff alleged to have been caused by the negligence of the defendants in the management of their engine and cars.

No exception was taken to the granting of the plaintiff's first prayer, and the defendants' first and third were conceded. In most cases of this kind some general instructions like these are the only guides practically useful or necessary to be given by the Court, the rule being that negligence is a question for the jury to decide, upon all the facts and circumstances of each case. But while this is the general rule, cases may and do sometimes occur, where the Court is required to declare some glaring act of carelessness on the plaintiff's part to be, in law, such contributing negligence as will prevent a recovery, or, on the other hand, where the proof of negligence on the part of the defendant is so slight and inconclusive in its nature as to demand from the Court an instruction as to its legal insufficiency to prove negligence, in order to prevent the jury from indulging in wild speculation or irrational conjecture. The defendants have supposed this to be such a case, and accordingly by their second and sixth prayers sought to have the jury instructed that upon finding the facts therein stated, there was such negligence on the part of the plaintiff directly contributing to the injury, as to prevent a recovery; in other words, that the act of the plaintiff in attempting to cross the street under the circumstances stated in each of the prayers, amounted in law to contributing negligence. These prayers asserting that certain facts amount to negligence, and upon finding them the plaintiff cannot recover, and the verdict of the jury must be for the defendants, necessarily concede the truth of all the other evidence in the cause, and all legitimate inferences therefrom tending to disprove negligence, and if, independent of the hypotheses of fact stated in the

prayers, there is proof from which the jury might fairly infer absence of negligence in the plaintiff, there was clearly no error in rejecting them. A slight examination of the prominent facts disclosed by the testimony will demonstrate the correctness of their rejection.

The plaintiff, a lad about fourteen years of age at the time, gives a very clear account how the accident occurred. His statement in substance is, that having been at work all day in his employment of driving an express wagon, he left the Camden station about dark to walk to his home on West Baltimore street, near Pine; that he hurried along, wanting to get his supper; and as he came from Camden to Eutaw he intended to cross the latter street there, and walk up on its west side, but found it blocked up with cars reaching across Camden street; that he then went up Eutaw, on its east side, as far as Dover street, where he saw an opening of some ten feet or more between the cars south and north of that street, which he attempted to pass through in order to cross Eutaw street, but when he got into the gap the cars moved up, closing the space rapidly; that he immediately jumped back, extricated his body with difficulty, and his arm was caught between the cars, crushed and severely injured; that when he thus attempted to pass he did not see any motion in the cars, heard no signal, no bell, received no warning, but saw a lady pass through the opening in safety before him. From the testimony of other witnesses, on both sides, it appears five or six cars had been standing on the track in Eutaw street during a greater part of the afternoon, of which four or five were between Camden and Dover, and one or two above the latter street, with an interval between them at that place of more than sixteen feet left to allow the free transit of passengers and vehicles along Dover and across Eutaw street; that between seven and eight o'clock an engine with a train of thirteen or fourteen cars attached was

backed from Conway slowly up Eutaw street, to take up these cars thus standing above Camden and Dover streets, and the accident occurred while this operation was going on. Now the prayers we are considering assume it was negligence in the plaintiff not to have noticed the motion of this slowly backing train, and the purpose of that motion, either when he reached Eutaw street, or while he was passing up on its east side, though the motion was quite slow, and it was then dark enough for the conductor of the train to use his lantern, and that when he reached Dover street, and saw this wide open space at a public crossing between the cars north and south of that position, obviously left open for the express purpose of a free passage across Eutaw street, it was in law negligence for him to attempt to use it, though he saw others passing through in safety immediately before him, and although the jury might believe his statement that he saw no motion, heard no signal, and received no warning, and that there was no employee of the company at the place to give notice of approaching danger to persons attempting to cross. In view of these considerations, and of all the proof in the cause, we are of opinion the Court properly refused to instruct the jury on the question of contributing negligence, as asked in these prayers.

The same reasoning applies to the defendants' fourth prayer, which is an attempt to define what, in law, amounted to due care and diligence, or the absence of negligence on their part under the circumstances of this case. There are other facts with inferences legitimately deducible therefrom on the question of the defendants' negligence not alluded to in this prayer. The train, some fifteen cars in length, including the locomotive and tender, was moving up a public street in the dark, to take up stationary cars, some above and some below Dover street, with an interval there left for crossing, as already stated. Now, though the bell may have been rung, and the mo-

tion slow, and the conductor walking with his lantern in the proper place, and giving warning by his voice, whilst the train was moving up to the four or five cars below Dover street, yet there is proof from which the jury might have found the train did not stop when it reached these cars, and that the conductor did not go ahead to the end of the train after it had been lengthened by their attachment, before he allowed it to be again set in motion, so as to close up the interval at Dover street, and take up the cars above that position. There is evidence from which the jury might well find that this obvious and necessary precaution was wholly omitted, that there was no stoppage at the first set of cars, but a continuous motion, so as to push or project them suddenly across the opening at Dover street, on the instant when the conductor was nearly a hundred feet distant from the point of danger, and when no one was there present to give warning. We cannot sustain the position that a jury should not be allowed to infer negligence from such management of a long train of cars on the thoroughfares of a city at night, even though they might find every fact stated in this prayer to be true. It was, therefore, properly rejected.

Comment was made in argument as to the effect of the instruction given by the Court in connection with the refusal of this fourth prayer. But to the Court's instruction no exception was taken, and no question as to its correctness is before this Court. It may, however, be proper to remark, that this Court cannot, in any case, consider what influence the rejection of one prayer and the granting of another in the presence of the jury may have upon their verdict. The jury must, in all cases, be presumed to have acted on the law of the case, as laid down by the Court in the instructions given, irrespective of the rejected prayers on either side. These latter are not before them, and they cannot allow the fact of their rejection to influence their verdict; and this Court is confined to a re-

view of the law of instructions granted or refused, when presented by exceptions duly taken in each case.

The testimony in the first exception objected to, but admitted by the Court, or at least part of it, tended to show the plaintiff was the son of a mechanic, and a laboring man. To this extent, and for this purpose, we think it was admissible. The plaintiff's second prayer, to the granting of which no exception was taken, disclaimed vindictive or punitive damages, and is, in other respects, identical with that sanctioned by the Court of Appeals in the similar case of *Bannon*, 24 *Md.*, 108. If, in fixing the amount of damages, the jury are to estimate to what extent the injury has disabled the plaintiff from engaging in such mechanical or other laborious employments or pursuits as but for the injury, he would have been qualified for, we do not see why they should not be informed by evidence, that his position and reasonable expectations in life were such as would render such pursuits probable and necessary for a livelihood. The evidence was objected to generally, and being, or at least part of it, admissible for this purpose, a general objection to the admissibility of the whole for any purpose was properly overruled. We find, therefore, no error justifying a reversal in the Court's ruling stated in the first exception. So far as the testimony, or any part of it, tended to show merely the father's *poverty*, and that he had a large family to support, and was sought to be used for the purpose of influencing the jury to increase for *this reason* and on *this account* the damages to be given to the son, it was clearly inadmissible in this case. But the objection should have been more specific, or if any attempt to make such use of it was apprehended, the defendants should have applied for an instruction, confining the testimony to its legitimate purpose. It, however, not only does not appear that any such attempt was made, but by the plaintiff's second prayer, which was not excepted to, and the defendants' fifth prayer, which was conceded, the elements

of calculation, upon which alone they were to estimate damages, were expressly enumerated and pointed out to the jury, and thereby the poverty of the father, or that he had a large family to support, was as effectually excluded from the basis of estimate as if the jury had been so instructed in express terms. The defendants thus had in effect the benefit of all they could rightfully demand on this subject, and do not appear to have been in any way injured by the admission of the testimony.

*Judgment affirmed.*

(Decided 24th November, 1869.)