## PETROL CORPORATION *v.* CURTIS
[No. 164, October Term, 1947.]

654

*Decided May 26, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, and HENDERSON, JJ., and BAILEY, Cir-
cuit Judge, specially assigned.

*Roszel C. Thomsen,* with whom were *Clark, Thomsen &
Smith* on the brief, for the appellant.

*Isidor Roman* and *Max Sokol,* with whom were *Jacob J.
Edelman* and *Emanuel H. Horn* on the brief, for the
appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Ernest G. Curtis, a truck driver, instituted this action
in tort against Petrol Corporation to recover for personal
injuries which he sustained while helping to fill an oil
truck in defendant's Canton storage yard in Baltimore.
As plaintiff received workmen's compensation from Hart-
ford Accident & Indemnity Company, insurer of M. I.
O'Boyle & Son, of Washington, his employers, he brought
this suit both for himself and to the use of the insurer.
He recovered a judgment for $8,000, from which defend-
ant appealed.

It was shown at the trial that plaintiff climbed on top
of the truck and put a loading pipe in one of the com-

partments of the truck, while George Muenzing, one of defendant's clerks, set the meter and turned the switch to let the oil flow into the tank. Plaintiff then pulled the cord to open the valve controlling the pipe. He filled one compartment, and pulled the cord to start the oil in the second when the cord broke at the pulley, throwing him backwards off the truck to the ground. He sustained fractures of his right arm and hip, which totally disabled him for some months and finally resulted in permanent partial disability.

Defendant's main contention was that there was no legally sufficient evidence to show that it was negligent. Edmund F. Tydeman, superintendent of the storage yard, testified that prior to the Second World War tiller rope was used to open the valves. The tiller rope, which is strengthened by a wire through the center, seldom broke, for whenever a piece became frayed from the strain at the pulley, a new piece was inserted. During the war, however, tiller rope was unobtainable; and so, when any of the old tiller rope wore out, they substituted sash cord. While the sash cord worked satisfactorily, it usually wore out in a few months. Before the accident chains were ordered, but they were not delivered until two days after the accident.

It is an accepted rule that a possessor of land is subject to liability to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, unless the licensees know or, from facts known to them, should know of the possessor's activities and of the risk involved therein. 2 *Restatement, Torts,* sec. 341. The standard of care which a possessor of land owes to a licensee is the same as that which a master owes to his servant. *Consolidated Gas, Electric Light & Power Co. v. Chambers,* 112 Md. 324, 338, 75 A. 241, 26 L. R. A., N. S., 509. In other words, he is not required to provide the most modern mechanical appliances, but only to use ordinary care to provide reasonably adequate and safe appliances and to keep them in a reasonably safe condi-

tion. *Security Cement & Lime Co. v. Bowers,* 124 Md. 11, 91 A. 834. Where injuries to employees are caused by inadequate or defective machinery or appliances used in the prosecution of the work for which they are employed, the employer is liable, provided that he knew or, by the exercise of reasonable care and prudence might have known, that the apparatus was defective and unsafe, *Koester Bakery Co. v. Poller,* 187 Md. 324, 50 A. 2d 234; *Union Pacific Ry. Co. v. Snyder,* 152 U. S. 684, 14 S. Ct. 756, 38 L. Ed. 597. It is thus defendant's duty to furnish reasonably safe loading facilities and to inspect them as often as necessary under the circumstances to keep them in a reasonably safe condition. *New Deemer Mfg. Co. v. Wells,* 5 Cir., 296 F. 687. Defendant is not required to adopt extraordinary tests for discovering defects in appliances. *Texas & Pacific Ry. Co. v. Barrett,* 166 U. S. 617, 17 S. Ct. 707, 41 L. Ed. 1136. But the duty to inspect the appliances is not discharged by merely employing competent inspectors and delegating the work to them; but the inspectors must perform the work with reasonable care and diligence, and defendant is liable if its inspectors fail to discover a defect which a reasonable inspection would have disclosed. *Hix v. New York Central & H. R. R. Co.,* 230 Mass. 309, 119 N. E. 827; *Baltimore & Ohio R. Co. v. Baugh,* 149 U. S. 368, 13 S. Ct. 914, 921, 37 L. Ed. 772; *Union Pacific Ry. Co. v. Snyder,* 152 U. S. 684, 14 S. Ct. 756, 38 L. Ed. 597.

In this case the accident happened in the afternoon of October 26, 1945. Tydeman, the superintendent, testified that there were two loading racks with facilities for loading 29 trucks. He testified that Muenzing had been instructed to inspect the ropes and sash cords that morning. Muenzing testified that he started to work at 7 a. m., but admitted that he did not inspect any of the ropes or cords that day, claiming that he was too busy. The superintendent admitted that the clerk's failure to inspect on the day of the accident was a violation of instructions, and that if an inspection had been made it would undoubtedly have disclosed that the cord was damaged and weak. As

stated in *Doherty v. Booth,* 200 Mass. 522, 86 N. E. 945, where a rope which, if in proper condition, would be of ample tensile strength to sustain the strain for which it was intended, broke when it was subjected to ordinary strain, the jury from their common experience could find that it would not have broken unless it had become unsound. The superintendent admitted that no signs had been posted on the premises and no written or oral notice had been given to warn truck drivers that sash cord had been substituted for tiller rope at some of the loading pipes. It was for the jury to decide whether defendant had failed to take proper precaution to warn truck drivers that sash cord was not as strong as tiller rope. The jury were warranted in finding that defendant might have discovered the defect in the cord, and therefore was negligent for allowing it to be used without an inspection on the day of the accident. Defendant contended that it was not reasonable to anticipate that the breaking of a cord would cause a truck driver to fall from a truck if he exercised ordinary care. We do not deny that the accident was an unusual one. But it cannot be said as a matter of law that such an accident was so improbable that it was not reasonable to anticipate it. It was testified by employees of the company that the valves are under a certain amount of pressure to keep the oil from flowing out, and the truck driver is in a precarious position when he stands on the catwalk near the top of the truck.

Defendant's second contention was that plaintiff assumed the risk and was guilty of contributory negligence. It is well established that an employee is bound to observe such defects and dangers as would be seen by an ordinary person using reasonable care and prudence. The law presumes that the instinct of self-preservation will prompt a man, who has been employed to operate machinery, to exercise at least ordinary care and prudence. If he fails to do so, and is injured as a result of his negligence, he is barred from recovering. *Pinehurst Co. v. Phelps,* 163 Md. 68, 73, 160 A. 736; *Gordon v. Maryland State Fair,* 174 Md. 466, 199 A. 519; *LeVonas v. Acme Paper Board*

*Co.*, 184 Md. 16, 23, 40 A. 2d 43. In *Schulz v. Johnson*, 7 Wash. 403, 35 P. 130, where the plaintiff operated a saw in a saw mill, but never inspected the rope which moved the saw by means of a pulley, the Supreme Court of Washington held that the sawyer, in accepting employment in the mill, accepted the apparent risks incident to the employment, and was barred from recovery for injuries which he sustained as a result of the breaking of the rope, because he could have examined every part of it with the slightest effort, and could have discovered and averted any danger. The sawyer had been operating the saw for more than three months, and he could see that the rope was wearing out, and he should have realized the danger.

But that case is different from the case before us. Here the truck driver testified that this was only his second trip to the Canton yard since the war, and he had no knowledge that the cord was weak. He said that when he was on top of the truck, his eyes were about on a level with the pulley, but he was five feet away from the pulley, and at that distance he could not examine the cord back of the pulley. While standing on the catwalk he did not have a good chance to inspect all of the cord. We cannot say with certainty that, if the cord was frayed, its frayed condition must have been just as apparent to the truck driver as to the employees who were delegated to make careful inspections. As the nature of the act upon which defendant relies to show contributory negligence can be determined only by a consideration of all the circumstances preceding the accident, the question of plaintiff's contributory negligence was for the consideration of the jury. *Virginia Dare Stores v. Schuman*, 175 Md. 287, 298, 1 A. 2d 897. We therefore conclude that the motion for a directed verdict was properly overruled.

Finally, defendant urged that a new trial be awarded on account of alleged errors in the admission of evidence. One objection was to the expert opinion of Dr. Anthony B. Buchness that the plaintiff would suffer permanent discomfort in his hip. The ground of the objection was that the physician had not examined plaintiff since May, 1946.

The physician explained that the patient's injuries included the injury to the hip bone as revealed by X-rays and the associated injury to the muscles and ligaments around the hip bone. As the physician had examined the patient after he had returned to work more than six months after the accident, we see no reason why the expert opinion should have been excluded merely because he did not examine the patient a short time before the trial. *Greer Transportation Co. v. Knight,* 157 Md. 528, 539, 146 A. 851.

The other objection was to plaintiff's testimony that he has five children. In a suit to recover damages for injuries caused by negligence, evidence as to the family of the injured plaintiff is irrelevant. Often the manifest purpose of such evidence is to inform the jury that the plaintiff has children depending upon him for support and that the injury affected the comfort of his dependents. Such evidence, when introduced along with evidence of the impairment of ability to earn money, is calculated to increase the award of damages beyond the amount which would normally be a fair compensation for the injury. *Stockton v. Frey,* 4 Gill 406, 420, 45 Am. Dec. 138; *Pennsylvania Co. v. Roy,* 102 U. S. 451, 26 L. Ed. 141. But it is well settled that the admission of such evidence does not justify a reversal of the judgment on that ground alone, where the trial judge has properly instructed the jury as to the measure of damages. *Baltimore & Ohio R. Co. v. Shipley,* 31 Md. 368; *Baltimore & Ohio R. Co. v. State to Use of Hauer,* 60 Md. 449, 459; *United Railways & Electric Co. v. Riley,* 109 Md. 327, 341, 71 A. 970. In the Court below plaintiff introduced evidence as to the nature and extent of his injuries and the degree of permanency thereof. He also introduced evidence of his medical and hospital expenses, and the amount of time he lost from employment. The trial judge instructed the jury properly as to the measure of damages for the injuries sustained. We do not find that the mention of the number of plaintiff's children caused defendant any prejudice.

Finding no reversible error in the rulings of the trial judge, we will affirm the judgment entered upon the jury's verdict.

*Judgment affirmed, with costs.*