STATE, Use of Reynolds et al. *v.* CITY OF
BALTIMORE et al.
WEIDMAN, Administrator *v.* CITY OF
BALTIMORE et al.
(Two Appeals in One Record)
[No. 93, October Term, 1951.]

290

*Decided February 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Edward L. Rich, Jr.,* and *John D. Alexander,* with whom were *Constable & Alexander* on the brief, for the appellants.

*Robert D. Bartlett* and *C. Damer McKenrick* for Samuel R. Rosoff, Ltd.

*F. Clifford Hane, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the City of Baltimore.

HENDERSON, J., delivered the opinion of the Court.

These two cases arise out of the accidental death of a workman in the course of the construction of a Water Tunnel Project in Baltimore City. Suits were instituted against the City and Rosoff. A demurrer by the City

to the third amended declaration was sustained without leave to amend. Trial of the cases against Rosoff resulted in directed verdicts in favor of the defendant and judgments thereon. There is little dispute as to the facts and they may be briefly stated.

The Water Tunnel Project, designed to bring water into the City from the Patapsco River Valley, called for the construction of a tunnel, varying in diameter from seven to ten feet and in depth from sixty to three hundred feet, for a distance of about seven miles. The City caused four shafts to be sunk for the purpose of providing prospective bidders with information as to the soil and rock formation, and as a means of ingress for workmen and materials and egress for the spoil from the excavation. Rosoff was the successful bidder for the work of exacvating and lining the tunnel "and all appurtenant construction necessary for the complete installation as shown on the drawings and/or as specified." "The contractor shall furnish all labor, tools, implements, materials, machinery and equipment necessary * * * for such complete installation." Under the heading "Safety Precautions at Shafts" it was provided that "cages with fixed guides shall be used for hoisting men and materials during construction." The cages operate in what are known as "headframes". Rosoff entered into a contract with Archer Iron Works, Inc., of Chicago, for "fabrication and erection of the four headframes complete, installed in place in accordance with the terms of this agreement", for $195,000. Plans for the headframes and hoists were submitted to and approved by the City. Archer contracted with Arthur Phillips & Co. of Towson, Maryland, on a "time and material basis", for the latter to supply ironworkers and equipment for the assembly and erection of the hoists and lifts under Archer's supervision. The last work under this contract was begun at the Montebello Shaft in February, 1948.

On February 13, 1948 a headframe section was being lowered from the surface to a point near the bottom of this shaft by means of a crane, operated by one Massey,

in the general employ of Rosoff. It appears that Phillips' crane was not available that day, and Rosoff's crane had been substituted. The operation was under the general direction of Leroy, Archer's superintendent. Weidman, Phillips' employee, was riding the section to guide it down the shaft and place it in position. The crane operator allowed the cable to slip on the brake drum; the safety dog or pawl was not in place, and there was a severe jolt. Weidman lost his hold and fell down the shaft. He was painfully injured and died the next day.

Thereafter claims under the Workmen's Compensation Act were filed by the dependents of the deceased employee against Phillips. Awards were passed and have been, or are being, paid by Phillips' insurer. Thereupon suits for the death under Article 67 of the Code, and for pain and suffering under Article 93 of the Code, were brought against the City and Rosoff. Rosoff had complied with all relevant provisions of the workmen's Compensation Act and claimed immunity from suit.

The trial court ruled as a matter of law that these suits could not be maintained against Rosoff as a negligent third-party amenable to suit under Section 59, Article 101 of the Code (1947 Suppl.). The common law action for damages is preserved by that section only against a "person other than the employer" of the workman. The test of whether Rosoff was an employer of Weidman, within the meaning of Section 59, depends upon the application of Section 63, Article 101 of the Code (1947 Suppl.) which provides:

"When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as sub-contractor, for the execution by or under the sub-contractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this Article which

he would have been liable to pay if that workman had been immediately employed by him; * * *."

There can be no doubt that "where the prescribed conditions exist, the principal contractor becomes by the act the statutory employer" and is entitled to immunity from suit under the exception in Section 59. *State, use of Hubert v. Bennett Building Co.*, 154 Md. 159, 162, 140 A. 52. In that case a tile-worker, employed by a sub-contractor of a building contractor, was killed by the latter's negligence. The court said, 154 Md. at page 166, 140 A. at page 54: "Although acting independently of the other, the principal contractor and the subcontractor, with his workmen employed in the execution of the work, were each, in his own separate capacity, cooperating toward the execution of the whole of a particular work which the principal contractor had promised to perform." On the other hand in *Long Co. v. State Accident Fund*, 156 Md. 639, 144 A. 775, it was found that the relationship of principal contractor and subcontractor did not exist, for although there was a contract to erect a building, the contract provided that "the owner * * * will make direct contracts for the heating and ventilating, the plumbing, drainage, etc., the electric wiring, tubing, etc., and the refrigerating equipment." The owner let a contract for the electric wiring and an employee of that contractor was injured. The court said, 156 Md. at page 645, 144 A. at page 778: "to create the principal contractor a statutory employer he must have contracted in the first instance to do the work himself, and subsequently sublet the whole or a portion of it to someone else."

We think the *Long Co.* case is distinguishable. In the instant case the City did not reserve the right to make separate contracts for portions of the work. The whole work of constructing the tunnel was let to Rosoff. The fact that the work of erecting the hoists was necessarily preliminary and appurtenant to the actual excavation does not make it any the less an integral "part of the work undertaken by the principal contractor". It was

within the contemplation of the parties that Rosoff should provide headframes to support the hoists and cages; in no other way could the excavated material be removed. Removal of spoil is an essential part of a tunnel-digger's "trade, business or occupation". While we have found no case directly in point, it has been held that the erection and repair of oil well derricks is within the scope of an oil company's business, as a necessary incident thereto. *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219, 221; *Dandridge v. F. & C. Co.*, La. App., 192 So. 887. Other cases are collected in a note in 151 A. L. R. 1359. This is true even though the sub-contractor is a specialist in its line. *Sears, Roebuck & Co. v. Wallace*, 4 Cir., 172 F. 2d 802, relied on by the appellant, is clearly distinguishable on the facts, for Sears was not in the building trade at all. The fact that the construction of a store was necessary or convenient to the conduct of its retail business did not convert it from a merchant to a builder by trade.

The appellant contends, however, that Archer was not a subcontractor for work or labor in connection with the construction of the tunnel, but only the vendor or supplier of a temporary hoist or tool which he undertook to fabricate and erect at the site. The appellant relies upon *McGann v. Moss*, D. C., W. D. Va., 50 F. S. 573. In that case the general contractor purchased building material to be used in construction work and a truck driver employed by the seller was injured while unloading it at the site. The case turned on the fact that the Virginia statute, unlike the Maryland statute, excluded independent contractors from the operation of the act. The court also held, however, that there was no relation of principal contractor and sub-contractor within the meaning of the statute, since the contract was merely for the sale and delivery of goods. Likewise, in *Bencivengo v. Benson Co.*, 319 Mass. 110, 64 N. E. 2d 918, where an injury was sustained in the delivery of pipe, to be used in the work undertaken, it was held that the relationship was not established. While the principal contract in

those cases contemplated the obtaining of material, the sub-contractor was not obligated to perform any work in direct furtherance of the project. In the instant case the installation of the headframes was an integral part of Rosoff's undertaking and in subletting that portion of the work we think he was a statutory employer within the meaning of section 63. Since there were no disputed issues of fact to be resolved by a jury, we think the verdict was properly directed in favor of Rosoff.

In the claim against the City it is not contended that it was a statutory employer. Nor is it denied that Rosoff was an independent contractor. But the appellant contends that the City owed a duty to Weidman as an invitee or business visitor to use ordinary care for his safety; that the City reserved control over the work done on its premises; and that it was negligent in failing to exercise proper control, and in permitting unsafe methods to be used, in work that was inherently dangerous.

It is true that an owner may be liable to the employees of an independent contractor for injuries arising out of the abnormally dangerous condition of the premises. *Le Vonas v. Acme Paper Board Co.,* 184 Md. 16, 20, 40 A. 2d 43; *Petrol Corp. v. Curtis,* 190 Md. 652, 59 A. 2d 329. But in the instant case the injury was not due to the condition of the premises or any defect in the equipment. It is not alleged that any safety device was lacking, that there was any defect in the equipment, or that there was any failure to inspect. On the contrary, the injury was due solely to the negligence of an employee of one of the contractors in failing to set the safety pawl on the crane, and no precaution on the part of the City could have prevented it. It is true that the contract with Rosoff provided that the "prosecution of the work" by Rosoff should be under the direction of the City Engineer, that all equipment should be satisfactory to him, that the contract could be annulled for the use of improper equipment, and that Rosoff was required to comply with all applicable laws and regulations in performing the work. The City also retained the right

to inspect the work and to pass upon the safety, efficiency and adequacy of methods or appliances for securing the safety of workmen. Nevertheless, the control retained did not constitute the City a guarantor against negligence on the part of Weidman's fellow servants. The power retained by the City was obviously for the purpose of securing strict compliance with the terms of the contract and all proper safety precautions, not to direct the employees of the contractor in details of the work. *Salmon v. Kansas City,* 241 Mo. 14, 145 S. W. 16, 39 L. R. A., N. S., 328. See also 18 *McQuillin, Municipal Corporations,* (3d ed.) § 5376, and cases cited. The rule laid down in *2 Restatement, Torts,* Introductory Note p. 1101 indicates that the general rule of non-liability for injuries to an employee of an independent contractor (section 409) is subject to certain exceptions. But these exceptions do not rest on any theory of agency. The owner is answerable only for personal fault, such as failure to select a competent contractor, or failure to properly exercise the control retained. See also Section 414, comment a.

We think this proposition is supported by the Maryland cases. In the leading case of *Deford v. State, use Keyser,* 30 Md. 179, the owner's liability was predicated upon patently defective work, amounting to a nuisance, which caused injury to a passerby on the public street. In *Pierson v. Gohr,* 126 Md. 385, 94 A. 1021, relied on by the appellant, recovery was allowed against a contractor by an employee of a subcontractor, where the injury was due to the failure of the contractor, actively supervising the details of the work, to provide a safety screen against falling objects, and the accident was reasonably foreseeable. In *Thillman v. Baltimore City,* 111 Md. 131, 139, 73 A. 722, recovery was predicated upon a failure of the City to detect faulty workmanship by a paving contractor, which inspection would have disclosed. It was held that the City was answerable to an adjoining property owner for damages by flooding due to defective construction.

In the instant case the declaration does not allege any neglect of duty so far as safety precautions are concerned, except in permitting Weidman to "ride" the headframe section, which it characterizes as an "unsafe method" to be used. Obviously, it was necessary for workmen to be lowered into the shaft before the head-frames could be put together, and it was also necessary for someone to guide the headframes down the shaft. The appellant cites paragraph 9185 of the Baltimore Building Code (1941 ed.) which provides among other things: "No person shall be permitted to ride on a builder's hoist". If we assume, without deciding, that "person" includes workmen employed on a construction job, it seems apparent that the words "builder's hoist" in the context refer to a completed hoist and not to a crane lowering a section of a headframe. We think the section is inapplicable. If applicable, it would seem to prevent the sinking or lining of any shaft anywhere within the City.

If it can be said that the operation was inherently dangerous due to the possibility of the cable slipping, as it did, the short answer is that the crane was equipped with a safety pawl to prevent this very thing. The accident was due not to the City's neglect but to the neglect of the operator to set the pawl. We do not suggest, however, that the City in any event owed a non-delegable duty to employees of a sub-contractor, as distinguished from members of the general public, to protect them against injuries in the course of work that is inherently dangerous.

Finding no sufficient allegations of a breach of duty by the City, owed to the employee of the independent contractor, we think the demurrer was properly sustained.

*Judgments affirmed, with costs.*