HOUSTON BELT & TERMINAL RY. CO. v. WOLKARTE.   (No. 7423.)

(Court of Civil Appeals of Texas. Galveston. June 22, 1917. Rehearing Denied Oct. 4, 1917.)

1. MASTER AND SERVANT ⬥288(16)—NEGLIGENCE—ASSUMPTION OF RISK—EVIDENCE.

Testimony of a car repairer that he had never worked with electricity, and that he was ordered to pick up a wire off the track of defendant torn down by a wreck, and did not know it was a live wire, was sufficient to make the question of assumption of risk one for the jury.

2. MASTER AND SERVANT ⬥286(41)—DUTY TO WARN—EVIDENCE—QUESTION FOR JURY.

Whether a foreman was negligent in ordering plaintiff to remove a wire torn down by a wreck, without warning him as to the danger, where plaintiff testified that he had never worked with electricity, and did not know the wire was a live one, held properly a question for the jury.

3. MASTER AND SERVANT ⬥278(20)—SUPERIOR KNOWLEDGE OF MASTER—ASSUMPTION OF RISK.

Evidence held sufficient to support a finding that defendant railroad's foreman, a master mechanic, had a knowledge superior to an employé as to whether a wire torn down by a wreck was a live wire.

4. MASTER AND SERVANT ⬥280—RELIANCE ON MASTER'S SUPERIOR KNOWLEDGE—EVIDENCE.

Evidence held to support a finding that a servant relied on the supposed superior knowledge of a foreman as to the safety of picking up a live wire torn down by a wreck on defendant's track.

Appeal from District Court, Harris County; Henry Dannenbaum, Judge.

Suit by Edward G. Wolkarte against the Houston Belt & Terminal Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Andrews, Streetman, Burns & Logue, Coke K. Burns, and W. L. Cook, all of Houston, for appellant. L. E. Blankenbecker, of Houston, and Ewing Werlein, of New Orleans, La., for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries suffered by him and alleged to have been caused by the negligence of appellant.

In substance, plaintiff alleges in his second amended original petition, upon which he went to trial, that the complained-of injuries were produced by electricity, which passed into his body by reason of his having seized with his hand a fallen live wire, under orders from his superior in the employment of the defendant. He alleges inexperience on his part in handling electric wires, and complains of the order alleged to have been given by the foreman, and of the method by means of which the removal of the wire was undertaken, asserting that the Light & Power Company should have been called on for assistance, and that this injury or some similar injury ought reasonably to have been anticipated. He alleges the wire was pulled down by the defendant's wrecking machine, engaged in clearing one of the main line tracks which had been blockaded by a wreck, and plaintiff was one of the members of the wrecking crew. He claims he did not know the wire was alive or dangerous, and claims that a person of ordinary care would have obeyed the order under the same or similar conditions. Tr., pp. 2–7.

The defendant demurred to the material allegations in plaintiff's pleadings, and denied all of same. It also alleged that the plaintiff and his fellow members of the wrecking crew were engaged in interstate commerce at the time of the accident in question, in that they were cleaning up a wreck which obstructed a track over which regularly moved trains engaged in the carriage of freight and passengers in interstate commerce, particularly between the state of Texas and the state of Louisiana. It was further alleged, in this connection, that the wrecked car which was being removed from the track at the time the wire in question fell to the ground was a part of a train of cars containing interstate commerce, particularly goods being moved from points in the state of Texas to and beyond the state of Louisiana.

Defendant pleaded assumed risk in the following language:

"For further and special answer, if answer be required, defendant says that plaintiff should recover nothing by his suit, because the injuries sustained by him, if any, were proximately caused, and not otherwise, by risks, dangers, and hazards which he assumed. In this connection, defendant shows the court that the danger of suffering injury by contact with the wire in question was a danger open, patent, and obvious, resulting from the operation of a plain, natural law, and the same was a danger which said Edward G. Wolkarte fully understood and appreciated, as he did also the means of avoiding such danger; and said danger and the means of avoiding same must necessarily have been well known, understood, and appreciated by said plaintiff if he was then and there in the exercise of ordinary care in and about the work he was doing. Furthermore, said Wolkarte was in as favorable position to know and appreciate the danger as was any alleged vice principal of the

defendant; and defendant shows that any person, though of immature years and discretion, would necessarily have appreciated the danger of taking hold of a live wire with the bare hands."

Defendant also pleaded contributory negligence in the following language:

"For further and special answer, if answer be required, defendant shows that plaintiff was guilty of contributory negligence, in that he took hold of the wire in question, which was charged with electricity, with knowledge that same was so charged, which action on his part was contrary to what would have been done by a person of ordinary prudence under the same or similar circumstances; and defendant pleads that the negligence of said Wolkarte was either the sole proximate cause of any injuries he sustained, or, in the alternative, that such negligence was a contributing cause, which should operate to diminish any damages he might recover."

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff in the sum of $2,500.

The evidence shows that, at the time of his injury, appellee was in the employment of appellant in the capacity of car repairer, and was working with a wrecking crew of appellant, replacing upon the track and repairing cars in a freight train on appellant's road which had been derailed.

The following agreement was entered of record during the trial:

"It is agreed by and between the parties to this suit that the track upon which the wreck, referred to in the evidence, occurred, was the main line track of the Houston Belt & Terminal Railway Company, over which trains in interstate commerce moved from Texas to Louisiana, and vice versa; and also that this particular train that was wrecked was an interstate train."

The wreck occurred on the night of August 23, 1914. The crew of which appellee was a member reached the scene of the wreck about 9 o'clock p. m. on said date. Mr. Jacobs, the master mechanic for appellant, was in charge of the crew and directed the work. He had authority to discharge appellee if his orders were not obeyed. Upon reaching the place of the wreck, the wrecking crew went to work under the orders of Jacobs, getting the wrecked cars out of the way and clearing the track. Appellee was at work under one of the cars adjusting some appliance for moving the car when he heard an order given to the wrecking engine to back up. He at once came from under the car, and when he got out he saw a wire fall from the engine across the track. Jacobs ordered appellee's brother, J. R. Wolkarte, to cut the wire and get it off the track. This order was obeyed, and J. R. Wolkarte after cutting the wire took one end and carried it to one side of the track, and Jacobs called upon appellee to come with him and take the other end off the track. Appellee obeyed the order and he and Jacobs took hold of the wire for the purpose of removing it.

The wire, which was a telegraph or telephone wire, was charged with electricity, and both of them received a shock. Jacobs let loose the wire and ran and was not injured, but appellee was unable to let go and was badly burned and severely shocked. The extent of his injuries and the reasonableness of the compensation allowed therefor by the jury are not questioned in this appeal.

Appellee testified that he did not know where the wire came from, and did not know it was a live wire when he took hold of it. He further testified:

"I am a skilled car repairer. As car repairer I never have seen any electricity around the cars. I have never been engaged in electrical work, only to shave poles out on Commerce street; but they didn't have no wires where I was shaving the poles. I have never in my life done any electrical work, or had any dealing with electricity. I have never had to handle electrical wires at any time, outside of this one occasion. As to what I thought about that wire, whether it was alive or dangerous, when my brother, John Wolkarte, cut the wire in two, Jacobs ordered me to go with him and get hold of the same wire my brother had in his hand, and I was led to believe he knew what was in that wire, and what he was doing, and I had full confidence in Mr. Jacobs as a master mechanic, and I went forward with him and picked it up not knowing or believing it was dangerous; if it had been dangerous I never would have taken hold of it."

Jacobs knew that the wire was charged with electricity when he ordered appellee to assist him in removing it. There was testimony contradicting appellee's statement that he did not know, when he took hold of the wire, that it was a "live wire." In a former trial he testified that when his brother cut the wire he stood on a dry piece of wood and used a felt hat to protect his hand when he took hold of the wire. In this trial he explained this statement by saying that he did not see his brother on the wood and use the hat, and his testimony on the former trial as to those facts was based on what his brother had told him after the accident occurred.

The verdict of the jury, which was returned upon special issues, finds the following facts:

"(1) That plaintiff was injured substantially as alleged in his petition. (2) That the defendant's foreman, Jacobs, in the course of his services for defendant, gave to the plaintiff an order or direction to take hold of the wire in question. (3) That such act on his part was negligence towards plaintiff; that is, a failure to exercise towards plaintiff such care as a person of ordinary prudence would have exercised under like circumstances. (4) That such negligence on the part of the foreman, Jacobs, was a proximate cause of alleged injury to plaintiff; that is, a cause without which the injury would not have happened, and from which the injury or some like injury might reasonably have been anticipated as a natural and probable consequence; in other words, a person of ordinary prudence, situated as was Jacobs on the occasion in question, could reasonably have anticipated injury to the plaintiff, or to such person as might respond to an order to take hold of the wire, as a result of such order. (5) That Ed. Wolkarte did not know that the wire was a live wire prior to the time he took hold of it. (6a) That neither the risk nor danger to plaintiff of suffering injury by contact with the wire in question was a risk or danger open, patent, and obvious to him before he took hold of it. (6b) That neither the risk nor danger to plaintiff of suffering injury by contact with the wire

in question was a risk or danger fully understood and appreciated by him before he took hold of it.  (6c) That neither the risk nor danger to plaintiff of suffering injury by contact with the wire in question was one that must necessarily have been known, understood, and appreciated by him before he took hold of it, if in the exercise of ordinary care in and about the work he was doing.  (7) That, in taking hold of the wire, Ed. Wolkarte relied upon supposed superior knowledge of Jacobs with reference to the danger of doing so.  (8) That the danger of taking hold of the wire in question, at the time plaintiff was instructed to take hold of it, was not a danger as easily ascertained and understood by the plaintiff, Wolkarte, as by Jacobs, the master mechanic, under the existing circumstances.  (8a) That a person of ordinary prudence situated as was Ed. Wolkarte on the occasion in question, and immediately prior to the time he seized the wire, would not necessarily have believed it was dangerous to take hold of same.  (9) That the act of the plaintiff in taking hold of the wire was not negligence on his part, under the attendant circumstances; that is, there was no failure on his part to exercise such care as a person of ordinary prudence would have exercised under the same or similar circumstances."

The first assignment of error complains of the refusal of the court to instruct the jury to return a verdict for the defendant, on the ground that upon the facts of this case plaintiff, as a matter of law, assumed the risk of the danger which was the proximate cause of his injury.  By the second assignment complaint is made of the refusal of the court to instruct a verdict for defendant upon the ground that the evidence does not raise the issue of any negligence on the part of the defendant which proximately caused the injury to plaintiff.  Neither of these assignments can be sustained.

[1, 2] The evidence clearly raises the issue of whether plaintiff knew that the wire was "live" when he took hold of it upon the order of Jacobs, a vice principal of appellant.

When the evidence does not conclusively establish that the risk was known to the plaintiff, or was open and obvious to common observation, or that, in the performance of

197 S.W.—65

his duty at the time of the accident, he must, in the exercise of ordinary care, necessarily have discovered the danger, the issue of assumed risk is a question of fact to be determined by the jury.  We think the evidence warranted the jury in finding against defendant's plea of assumed risk.  The evidence also authorized the jury to find that Jacobs was negligent in ordering plaintiff to take hold of a wire which he knew to be charged with electricity, without warning plaintiff of the danger of handling the wire.  The master and servant do not stand upon equal footing even when they have equal opportunities to discover the danger.  The subordinate position of the servant and his duty to obey the master gives him the right to rely, to some extent at least, upon the superior knowledge and skill of the master, and to assume that he will not be ordered into a place of danger.  Ry. Co. v. Carter, 47 Tex. Civ. App. 309, 104 S. W. 910; Beck v. Texas Co., 105 Tex. 303, 148 S. W. 295; A. L. Clark Lumber Co. v. Northcutt, 95 Ark. 291, 129 S. W. 88; Telephone Co. v. Evetts, 188 S. W. 289; Marshall v. Ry. Co., 107 S. W. 883.

[3, 4] The remaining assignments of error complain of the seventh and eighth findings of the jury, above set out, that plaintiff in taking hold of the wire relied upon the supposed superior knowledge of Jacobs, and that the danger of taking hold of the wire was not as easily ascertainable by plaintiff as it was by Jacobs.  These findings are attacked on the grounds that there is not evidence to sustain them, and that each of them is against the overwhelming weight and preponderance of the evidence.  We think the evidence is sufficient to sustain both of these findings, and neither of them is so against the weight and preponderance of the evidence as to justify this court setting it aside.

It follows from the conclusions above expressed that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.