AMERICAN SUGAR REFINING COMPANY *vs.*
WILLIAM W. GILBERT.

*Fellow Servants—Employee Loaned to Another—Cleaning Machinery—Contributory Negligence.*

An employee of one person may become the servant of another by reason of the loan of him by the former to the latter for some particular service, in which case he becomes the fellow servant of the servants of him to whom he is loaned.

p. 255

Plaintiff, an employee of a contracting firm, having, after the completion by such firm of the installation of electric machinery in a sugar refinery belonging to defendant, been loaned to the latter to aid in training its electricians, *held* that, he having testified that he continued to be paid by the contracting firm, and it appearing that he received orders both from the superintendent of that firm and from an employee of defendant, it was a question for the jury whether he was a servant of defendant and not of the firm.     pp. 256, 257

'Where, a conveyor in a sugar refinery having become clogged by an accumulation of sugar in the trough in which the conveyor worked, and the machinery having been stopped, an electrician, whose duty it was to look after the movement of the machinery, aided others in removing the sugar from the

trough, *held* that the fact that he used his hands for this purpose, while. the others used paddles, did not show, as a matter of law, contributory negligence on his part, there being. no special risk in so doing so long as the machinery remained motionless, and his injury resulting from the starting of the machinery.                                           pp. 257, 258

Evidence that an employee of defendant sugar refinery started the electric machinery while plaintiff was removing sugar from a trough in which a conveyor. revolved, *held* to be sufficient to go to the jury on the question of defendant's negligence.                                                       p. 258

That plaintiff failed "to pull out the switch" before undertaking to clean sugar from the trough did not warrant a directed verdict for defendant.       .                     p. 258

The evidence showing that it was the duty of plaintiff, an electrician, to keep the machinery in defendant's sugar refinery going, and that this necessitated the removal of an accumulation of sugar from a trough, the fact that it was not usual for electricians to remove such accumulations did not affect the duty which defendant owed him while he was aiding in such removal.                                              p. 259

*Decided February 29th, 1924.*

Appeal from the Baltimore City Court (STUMP, J.).

Action by William W. Gilbert against the American Sugar Refining Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*C. John Beeuwkes* and *Reuben Oppenheimer,* with whom were *Emory, Beeuwkes & Skeen* on the brief, for the appellant.

*Willis R. Jones,* with whom were *Briscoe, Jones & Martin* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

William W. Gilbert, the appellee, on the 12th day of April, 1922, while at work in the plant of The American Sugar Refining Company, in the City of Batimore, had his hand caught in a conveyor of sugar, which resulted in the "loss of the thumb and part of the metacarpal bone, in addition to the injuries to his hand and first finger." It appears from the record that Stone & Webster Company, a body corporate, under a contract with The American Sugar Refining Company, had installed the electrical machinery in its new plant, and in so doing the appellee was one of its employees. After the completion of the work Stone & Webster loaned to the American Sugar Refining Company certain electricians employed by it to be used in breaking in electricians employed by the American Sugar Refining Company in the operation of their plant. William W. Gilbert was one of the electricians loaned by Stone & Webster to that company. Gilbert had been at work under this arrangement for a short time only when the accident occurred.

Early in the morning of April 12th, 1922, it was discovered that one of the conveyors of sugar ceased to properly perform its functions because of the accumulation of sugar in the trough, in which the conveyor worked, in such quantities that the conveyor would not revolve. The machinery was stopped and those whose duty it was to remove the sugar when such conditions arose went to work to remove it. In so doing they were joined by Gilbert, the latter using his hands in taking the sugar from the trough, while the others used wooden paddles. When they had about finished removing the sugar, so that the conveyor could properly revolve, those removing it were asked if "it was clear," and they answered that it was. It seems, however, that Gilbert neither heard the inquiry nor the answer thereto, and when the answer was received the electric button was pushed and the machinery was thereby put in motion, catching the hand of Gilbert in the conveyor and inflicting the injuries sustained by him.

Thereafter, Gilbert claimed, and was awarded, compensation in the amount provided by law for injuries of that nature, payable by Stone & Webster, "employer," and its insurer. He then brought suit against the appellant, the American Sugar Refining Company, under section 58 of article 101 of the Code of Public General Laws of Maryland, as amended, and the trial resulted in a verdict in favor of the plaintiff for $8,500, upon which a judgment was entered for that amount, and costs. It was from that judgment that this appeal was taken.

The record contained three exceptions, two of which relate to the evidence, and one to the rulings of the court upon the prayers.

The plaintiff offered one prayer, a prayer upon damages, which was granted. The defendant offered eighteen prayers, three of which were granted as offered, and two granted after modifications. The others were refused.

The court was asked by the defendant's third prayer, which was rejected, to instruct the jury that the injuries complained of were directly caused by the negligence of a fellow workman of the plaintiff at the time of the accident, and to direct a verdict for the defendant.

The law as to the liability of the employer, when one of his employees suffers an injury while engaged in his employment, caused by the negligence of a fellow servant, is well stated in *O'Connell* v. *Balto. & O. R. Co.,* 20 Md. 221, where it is said:

"When several persons are employed in the same general service, and one is injured by the carelessness of another, though the negligent servant in his grade of employment is superior to the one injured, the employer is not responsible. The liability to injury of one person from the carelessness of his fellows is but an ordinary risk, against which the law furnishes no protection but by an action against the wrongdoer."

While the above is a true statement of the law in such cases, the question sometimes arises, as in this case, whether

the person whose negligence caused the injury was at the time a fellow servant of the injured person.

In this case, it is claimed by the defendant that the appellee, plaintiff below, though in the general employment of Stone & Webster, was, at the time of the accident, the servant of the defendant, and, therefore, a fellow servant of the employee of the defendant who, it is claimed, negligently pushed the electric button which put the machinery in motion, resulting in the injury sustained by the plaintiff; while the contention of the plaintiff is that he was never the servant of the defendant, but the servant of Stone & Webster, by whom, as he says, he was employed and paid for his services.

In 18 R. C. L. 757, sec, 223, it is said: "There is no doubt that the general servant of one person may become the servant of another by submitting himself to the control and direction of the other. In such a case the servant becomes the fellow servant of the servants of the person under whose control he comes, and neither his general master nor his special master is liable if he is injured by the negligence of one of the other servants." And cited thereunder is the case of *Delory v. Blodgett,* 185 Mass. 126, in which it is said: "When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him. * * * The test is, whether, in the particular service, which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired."

In *Sacker v. Waddell,* 98 Md. 51, CHIEF JUDGE BOYD, speaking for the Court, said: "There may, of course, be circumstances which would relieve a master for injuries sustained by reason of the negligence of one who is in his general employ. The master may so hire or loan his servant to another for some special service, as that he will, as to that particular service, become the servant of such third person. If the master has parted with all power of control over the

servant and permits the third person to make such use of him as he may deem proper, he may *quoad* that service, be the servant of the third person, and not of the general master." But in that case the Court held that the facts were not of that unvarying character by which the court could say therefrom, as a matter of law, the party inflicting the injury was a servant of the defendant, and as the trial court had held otherwise, the directed verdict in favor of the defendant was reversed, JUDGE BOYD saying in that case that: "When the facts are such as to make it doubtful whether the relation between the servant and the original master continued for the particular service during which the accident happened, it is usually a question for the jury to determine." See the cases there cited. The same view is expressed in *Deford* v. *State, use of Keyser,* 30 Md. 179; quoted by JUDGE BOYD in *Sacker* v. *Waddell, supra,* where it is said, in speaking of the difficulty at times of determining who is the master of the party, that such fact "depends mainly upon the terms and character of the contract employment. * * * The terms and manner of employment were, of course, matters of fact for the jury; it being for the court to declare the legal relation that existed between the parties, upon any given state of facts."

In this case the plaintiff, who continued to work at the plant of the defendant after the installation of the electric machinery had been completed, testified that he remained in the employment of Stone & Webster and was paid by them for the services he rendered at defendant's plant. When asked "who gave you that assignment?" (meaning thereby the work at which he was employed when the accident happened) he replied, "Why, Mr. Kalbach, the electrical superintendent for Stone & Webster," and upon being further asked what his duties were, he said, "I was instructed to keep the machinery going and to look after it and see that it kept going, and in case it did not go to get it started as soon as possible." "Those instructions you obtained from whom?" "From Mr. Kalbach." It is true that he, upon cross-examination, said: "I was instructed that I would practically

be under a man by the name of Mr. Vansant," the electrician employed by the defendant, and that he would report to him. He further testified that he could not recall that Vansant ever gave him any orders, more than to say on one occasion, "keep the machinery going," the same order that had been given to him by Kalbach, electricial engineer of Stone & Webster. When asked from whom he took orders, he said: "There was no order given me, because I was practically the only man on the job at that time."

Kalbach, when called to the stand by the defendant, testified that when he loaned Gilbert to Vansant, Gilbert understood he was working for Mr. Vansant, and that he was to take orders from him, and that he had not given to Gilbert any order to keep the machinery going, and he did not know of any such order having been given by the defendant company.

Vansant, who likewise testified for the defendant, said in his testimony that Gilbert was under his control and supervision, but when asked if Gilbert also "got orders from Mr. Kalback, the electrician of Stone & Webster, as to what to do," he replied "yes."

This evidence, upon which it must be determined whether Gilbert was or was not the servant of the defendant, is not so clear and convincing as to enable us to say, as a matter of law, that at the time of the accident, Gilbert was a servant of the defendant, and not the servant of Stone & Webster; therefore that question was properly submitted to the jury under defendant's twelfth prayer.

The defendant's first prayer, which asked for a directed verdict because of the contributory negligence of the plaintiff, was in our opinion properly rejected. The negligence with which he was charged was the removal of the sugar with his hands, from the trough in which the conveyor revolved, when the latter was not in motion.

Before Gilbert attempted to remove the sugar the conveyor, of course, was stopped, and so long as it remained motionless, he assumed no special risk and danger in remov-

ing with his hands the sugar from the trough. He was the electrician whose duty it was to look after the movement of the machinery, and he might well have thought that the machinery would not be started unless by him, or some one upon his direction. The evidence discloses that others who aided in removing the sugar from the trough used wooden paddles. The use of them, no doubt, was a wise precaution. At the same time, we do not feel justified in saying that because Gilbert did not use such an instrument he, as a matter. of law, was guilty of contributory negligence. This question too, was properly submitted to the jury by the defendant's fifteenth prayer.

The second prayer of the defendant, which asked for a directed verdict because of the negligence of the plaintiff *and a fellow workman,* was likewise properly rejected.

The defendant's fourth prayer, upon the question of assumed risk and peril, was also in our opinion properly rejected, as the evidence in the record does not warrant the granting of it.

The defendant's fifth prayer asked the court to instruct the jury that there was no evidence legally sufficient to entitle the plaintiff to recover. In passing upon this prayer we are to consider the question whether or not there was evidence legally sufficient to go to the jury, tending to show primary negligence on the part of the defendant. After holding, as we have, that the question whether or not the plaintiff was a servant of the defendant was for the determination of the jury, this question cannot be determined without considering the act of the employee of the defendant in starting the machinery while the plaintiff was still removing sugar from the trough, and as such act must be considered by us, it cannot be properly held that there was no evidence legally sufficient to go the jury tending to show negligence on the part of the defendant.

The defendant's sixth and seventh prayers, like its first and second prayers, were properly rejected.

The defendant's ninth prayer asked for a directed verdict for the defendant because of the failure of the plaintiff "to pull out the switch" before attempting to clean the sugar from the trough.  Such failure of the plaintiff, we think, was not of such character as to warrant the granting of that instruction, and the prayer was properly rejected.

The tenth, eleventh and thirteenth prayers were, we think, properly modified, and without discussing them in detail we find no error in the court's rulings in rejecting the fourteenth, sixteenth, seventeenth and eighteenth prayers.  Nor do we discover any reversible error in the court's action in granting the plaintiff's prayer.

This brings us to the rulings of the court upon the exceptions to the evidence.  A witness was asked in the first of these exceptions "Had you ever known in your experience before this accident of an electrician cleaning sugar out of a conveyor," and in the second exception, another witness was asked practically the same question, that is, "Have you in your experience ever known an electrician to clean out sugar from a conveyor that has become clogged?"

It was, we think, immaterial whether they had or had not known of such work being done before by an electrician. The record does not disclose that the plaintiff was told not to do so, or that it was not part of his duty under his employment, but on the other hand, the evidence shows that it was his duty to "keep the machinery going" and to do so the sugar had to be removed from the trough, consequently his conduct in helping others to remove the sugar, a work very simple in its character, not shown by the record to require more intelligence or information than was possessed by him, in no way affected the duty which the defendant owed him.

As we fail to discover any reversible error in any of the rulings of the court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*