HARRY RIGANIS *v.* THEODORE MOTTU.

[No. 59, October Term, 1928.]

*Decided January 23rd, 1929.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George P. McCeney* and *Philip L. Sykes,* for the appellant.

*Joseph Townsend England* and *Fendall Marbury,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Baltimore City Court on a directed verdict for the defendant in an action on the case for personal injuries brought by Harry Riganis, the appellant, against Theodore Mottu, trading as Theodore Mottu & Company, the appellee.

There is in the record evidence tending to show facts which may be thus stated: Riganis needed some lumber for shelving at a laundry which he and a Mr. Allen, his partner, proposed to operate in Baltimore, and he, Allen, and a carpenter went to the appellee's lumber yard on Pennsylvania Avenue in that city to procure it. They went into appellee's office and told "the men in the office" what they wanted, and he asked them if they knew precisely what sizes they wanted. Riganis answered that they would "like to see" the lumber to be sure

they got the kind they needed. They were then told by the "man in the office" to go into the yard and ask "one of their men"to direct them to certain steps which led to the place where lumber such as they wanted was to be found, and then to come back to the office. They went into the yard and found there a colored man loading a truck. They asked him where they would find the particular kind of lumber which they needed, and he directed them to go up a flight of steps to a balcony or platform on which that sort of lumber was stored. That platform was from sixteen to twenty feet from the ground and the lumber was so placed as to leave a gallery or way about three feet wide between it and the edge of the platform, so that persons desiring to inspect it would be required to walk along that narrow gallery or way. And one so walking along it would have on one side the piled up lumber and on the other the outer edge of the platform from which there was a sheer drop to the ground below. Running along that edge was a railing about three feet high, consisting of 2 by 4 or 4 by 4 lumber, resting in slots cut in upright pieces which supported it.

Riganis and his companions went up the steps to the gallery and eventually found what they wanted. When they did, Allen took a piece of paper and a pencil and was jotting down memoranda, and as he was doing that, and while they were standing there in the gallery or way, Riganis leaned against the railing, which gave way, in consequence of which he fell to the ground and was injured.

As stated, the rail rested in a slot cut in the upright which supported it. The rail itself appeared from subsequent examination to be in sound condition, but the slot in the upright had become worn, and to quote one of the witnesses "it had been there for a long time and by people going up there, you know, this 2 x 4 or 4 x 4 in there, hitting against this side piece all the time, wore it out, and he put his weight against it and it went right over, one end of it did, and I said no wonder it is rotten." From that testimony, and from other testimony in the record, it may be inferred that such pressure as Riganis exerted against the rail forced it

against the outer edge of the slot, and that, because of the worn and defective condition of that slot, that end slipped out and the railing fell.

Upon these facts, the trial court ruled (1) that there was no legally sufficient evidence that appellee was guilty of primary negligence, and (2) that it sufficiently appeared that appellant was guilty of such contributory negligence as barred his right to recover; and by granting defendant's first and second prayers directed a verdict for defendant. We are unable to accept either of those conclusions, which we will consider in their order.

Appellant was on that part of appellee's premises where the accident occurred as an invitee (4 *Words and Phrases,* 3rd Ser., p. 526; 20 *R. C. L.,* "*Negligence,*" sec. 584; 5 *C. J.* 814), and appellee was bound either to exercise ordinary care to see that such premises were reasonably safe for him, or, if they were not, to warn the appellant of any latent or concealed danger. *Fulton Building Co. v. Stichel,* 135 Md. 545; *Bethlehem Steel Co. v. Variety Iron & Steel Co.,* 139 Md. 318; *Kann & Co. v. Meyer,* 88 Md. 541. It may be inferred from the evidence to which we have referred that he failed to discharge that duty, and that the accident complained of was caused by such failure. We have here no question of deviation, because it may be inferred that the appellant was expressly invited by appellee to go to the precise spot where the injury occurred. He went there to inspect lumber with a view of buying it if it suited his purposes. He was accompanied by his partner and by the carpenter whose judgment he needed to determine whether the lumber was suitable. He could only reach the lumber by way of the narrow gallery to which we have referred, and he was obliged to stand in that gallery to inspect it. On its dangerous side that gallery was apparently guarded by the railing to which we have referred. To one unfamiliar with the yard, it may well have appeared that the purpose of that railing was to protect persons using the gallery, and, from its substantial appearance, that it was adequate for that purpose. And the appellee should have anticipated that strangers using

the gallery might, because of the narrowness of the way, be led by its appearance to believe that it would be safe to touch it or even to lean on the rail, and that they might in inspecting the lumber touch it or lean against it for support. Under such circumstances it was his plain duty either to see that it was safe for such use, or to warn such persons as might lawfully use the way that it was unsafe, if such was the fact, and its defective condition was not apparent to one exercising ordinary care.

The distinction between such a state of fact and those involved in *Kinney v. Onsted,* 113 Mich. 96, is obvious. In that case the plaintiff was injured by leaning against a guard rail on a bridge twelve feet wide, which led over defendant's premises to its office. He went on the bridge to go to the defendant's office to transact some business with it, but as he was crossing it he was diverted by his son, who called to him that he wanted to pay him some money. The son was near the rail, and, as the plaintiff was talking to him, he leaned against the rail, which gave way and caused him to fall. The court in that case said that it was "certainly near the dividing line," but held that plaintiff could not recover because defendant had not invited him to lean on the rail. Without approving either the reasoning or the conclusion in that case, it may be said that it is not in point here, because at the time that injury occurred the plaintiff was not engaged in any business in which the owner of the premises was concerned, while here he was at the time of the accident actually engaged in transacting the business for which he had entered appellee's premises, and at a place to which he had been directed by appellee, and while using the railing in a manner which appellee should, because of the narrowness of the way, have anticipated that it might be reasonably used.

A case which seems closer to the question involved here, though not precisely in point, is *Sefler v. Vanderbeck & Sons,* 88 N. J. L. 636. In that case plaintiff fell from a balcony about three feet wide, on defendant's property, guarded by a railing about three feet high. He was in the balcony by defendant's invitation, to inspect lumber, and, while proceed-

ing along it, he placed his hand on the railing, which gave way, causing him to fall. The court, in dealing with the question of defendant's negligence, said: "The guard rail so insecurely placed was under the circumstances in the nature of a trap or concealed source of mischief. It was clearly, therefore, open to the jury to find that the defendant was negligent in the performance of its duty to the decedent, and the motion for a direction of a verdict was properly denied." In that case the plaintiff did not lean on the railing but placed his hand on it; but in *Berghman v. Dufresne* (Dist. Col.), 24 Fed. (2nd) 280, it was held that, where a roomer in a rooming house was killed, as a result of the collapse of a railing around a balcony adjacent to her apartment, which she had the right to use and on which at the time of the accident she was leaning in an attempt to throw a clothes line over a nearby tree, there could be a recovery. See also note 18 *Neg. & Comp. Cas. Annot.* 360; 5 *Id.* 312.

There are cases in which there are *dicta* in apparent conflict with the conclusion which we have stated, but such of them as we have examined are distinguishable on the facts, and, in our opinion, the rule applicable to the particular facts of this case is as we have stated it.

What has been said in reference to primary negligence has some bearing also upon the question of contributory negligence, and it is unnecessary to discuss that question at any length. There is nothing in the record which indicates so clearly that the defect, which caused the railing to give way, was so apparent, or that the railing was so obviously unsuited for the use of which appellant put it, that it can be assumed, as a matter of law, that he was guilty of contributory negligence in leaning against it, but upon all the facts and circumstances of the case that question was clearly one for the jury. To justify the court in characterizing an act as negligent in law, it should be "distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent." *Taxicab Co. v. Emanuel,* 125 Md. 246. And no act of the appellant as shown by the

record possesses that quality. *People's Bank v. Morgolofiski,* 75 Md. 432; *Kann & Co. v. Meyer, supra; Winkelmann v. Colladay,* 88 Md. 78; *Bethlehem Steel Co. v. Variety Iron & Steel Co., supra; Consol. Gas Co. v. Green,* 137 Md. 503; *Leland v. Empire Engineering Co.,* 135 Md. 208; *Morgan-stern v. Sheer,* 145 Md. 208; *Merrifield v. Hoffberger Co.,* 147 Md. 134; *Balto. & O. R. Co. v. Davis,* 152 Md. 427; *Isaac Benesch & Sons v. Ferkler,* 153 Md. 680.

The judgment appealed from will therefore be reversed and a new trial awarded.

*Judgment reversed and case remanded for a new trial, with costs to the appellant.*