## VIRGINIA DARE STORES, INC., *v.* CHARLES SCHUMAN
[No. 3, October Term, 1938.]

288

*Decided October 26th, 1938.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter V. Harrison,* with whom was *Paul L. Cordish* on the brief, for the appellant.

*W. Hamilton Whiteford* and *Omar D. Crothers, Jr.,* with whom was *Albert Levin, Special Assistant Attorney General,* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

On July 1st, 1936, and for some time prior thereto, Charles Schuman was employed by Queen City Window Cleaning Company. Virginia Dare Stores, Inc., owner of a store at 15 West Lexington Street, Baltimore, had previously engaged York Ice Machine Company to install an air conditioning system in its store. As a result of the installation, the east and south walls of the store were left spotted and dirty, whereupon York Ice Machine Company employed Queen City Window Cleaning Company to clean them. On the morning of July 1st, 1936, Schuman and one Parr, a co-employee, were sent by the manager of their employer to the Virginia Dare Store to clean the walls in question under direction of Pillar, manager of the last named store. Their equipment consisted of buckets, sponges, cleaning powder, a step-ladder and a board, eighteen feet long, ten inches wide, and two inches thick. After having been shown by Pillar the walls which their employer had directed them to clean, they proceeded with the work. During its progress Schuman sustained personal injuries, allegedly as a result of the negligent conduct of the manager of Virginia Dare Stores, Inc. Schuman's employer carried Workmen Compensation Insurance in the State Accident Fund, and, after collecting from that agency compensation for his injuries, Schuman and the insurer brought suit under provisions of section 58, article 101 of the Code and secured a judgment, from which the present appeal is taken.

We will first make some reference to the pleadings. To the plaintiff's declaration, as amplified by his bill of particulars filed in response to a demand of defendant, a demurrer was filed and overruled. It is alleged in the *narr.* that Schuman on July 1st, 1936, at the solicitation of the defendant, its agents and servants, was in the store of the latter in Baltimore, Maryland for the purposes of washing walls therein, and while so engaged in those duties stood upon the molding of a dress case in order to reach the walls he was to wash, after he had first been assured by the defendant's agents and servants, and particularly its manager, that the said molding and dress case were safe to stand upon, but that the dress case and molding attached thereto, contrary to the assurance and warranties of the defendant, were unsound and unsafe for such purpose, all of which the defendant, its agents and servants, knew or should have known before directing and requesting the plaintiff to stand upon the dress case and molding to wash said walls, and that while standing on said molding of the dress case engaged in washing the walls of the defendant's store the molding broke from the case, threw the plaintiff to the floor, and he thereby sustained serious, permanent, and painful injuries, solely as the result of the defendant's negligence and without any negligence on his part contributing thereto. It is further alleged that plaintiff was at the time employed by Queen City Window Cleaning Company, who was insured under the provisions of the Workmen's Compensation Act in the State Accident Fund; that Schuman filed a claim with his employer's insurer for compensation based upon injuries he received arising out of and in the course of his employment, and the Commission ordered the insurer to pay unto him certain workmen's compensation on account of said accident and injuries, and to pay his medical expenses arising out of said accident; that the equitable plaintiff joined in the action against the defendant under the provisions of the Workmen's Compensation statute, Code Pub. Gen. Laws 1924, art. 101, sec. 1 *et seq.*, and that liability of the State Ac-

cident Fund to pay the compensation award was due solely to the fact that Schuman's accident and injuries arose out of and in the course of his employment; that said injuries were due solely to the negligence and want of care on the part of defendant, its servants and agents, and legal liability was imposed upon the defendant to pay damages in respect thereto, and under the Workmen's Compensation Act, the State Accident Fund, one of the plaintiffs, was authorized to enforce the liability of the defendant to Schuman for its use to the extent of compensation awarded or to be awarded him and his medical expenses incident thereto, and for the use and benefit of Schuman for the excess of damages sustained over and above the amount of compensation awarded or to be awarded.

These allegations are sufficient to place Schuman at the time of his injuries upon the premises of the defendant either as the employee of Queen City Window Cleaning Company prosecuting the work of his employer sent him to do under direction of Pillar, the defendant's manager, or doing work upon the premises, under the direction of the defendant's manager, which was not contemplated by his employer, or that he was there as appellant's invitee, but it is clear that, regardless of whether the proof places him in the first, second or third of these classifications, appellant owed him some duty. *Long Co. v. State Accident Fund,* 156 Md. 639, 144 A. 775; *Consolidated Gas etc. Co. v. Chambers,* 112 Md. 324, 75 A. 241; *Riganis v. Mottu,* 156 Md. 340, 144 A. 355; *Hochschild, Kohn & Co. v. Murdoch,* 154 Md. 575, 141 A. 905; *State, use of Lorenz, v. Machen,* 164 Md. 579, 165 A. 695; *Pennsylvania Steel Co. v. Nace,* 113 Md. 460, 77 A. 1121; *Atkins v. Madry,* 174 N. C. 187, 93 S. E. 744; *Labatt's Master & Servant* (2nd Ed.), sec. 1372.

It appears from the declaration heretofore referred to that this action is founded upon negligence in misrepresentation. No Maryland case has been found directly upon the subject, but the weight of authority in other jurisdictions seems to be that such action is not necessarily con-

fined to injuries arising from contractual relations; that the action lies for negligent words, recovery being permitted where one relies on statements of another, negligently volunteering an erroneous opinion, intending that it be acted upon, and knowing that loss or injury are likely to follow if it is acted upon. *Restatement of the Law of Torts,* sec. 310; *Tentative Draft No. 2, Restatement of the Law of Torts,* sec. 186A; 45 C. J. *"Negligence,"* sec. 125J; *International Products Co. v. Erie R. Co.,* 244 N. Y. 331, 155 N. E. 662; *Pollock on Torts* (12th Ed.) sec. 565; *Cunningham v. C. R. Pease Co.,* 74 N. H. 435, 69 A. 120; 35 Yale Law Journal, 767; 28 Columbia Law Review, 216; 81 University of Pa. Law Review 435; 24 Ill. Law Review, 749.

We, therefore, conclude that the demurrer to the declaration as supplemented by the bill of particulars, filed in response to defendant's demand, was properly overruled. After the demurrer had been overruled, general issue pleas were then filed by defendant, whereupon plaintiff made demand for the particulars of such pleas and reasons therefor, and requested that the defendant be required to set forth factually his defense. Defendant replied by stating for the particulars of its defense that the cause of action never existed except in the imagination of the plaintiff or his counsel. On motion of the plaintiff that the particulars of the defendant's general issue pleas be not received because abusive, impertinent, and a reflection upon plaintiff and his counsel, they were stricken from the record. This action was manifestly correct. The object of requiring the particulars of the pleas was to give plaintiff more factual information regarding the defendant's contention, and this the alleged particulars of the defense did not do.

That appellee was seriously, painfully and permanently injured is not disputed, but appellant maintains that no primary negligence on the part of the defendant has been shown; further that, by the uncontradicted evidence in the case, the plaintiff was guilty of contributory negligence as a matter of law. Defendant's prayers A to G,

inclusive, sought instructed verdicts upon those theories, but were refused by the trial court, and it is insisted that error was committed in their rejection. If they believed the evidence offered on behalf of the plaintiff, the jurors could have found that Schuman was employed by Queen City Window Cleaning Company at the time of the accident, that the company last named was engaged by York Ice Machine Company to clean the east and south walls of appellant's store, and Schuman and Parr, his co-employee, on the date of Schuman's injuries, were sent to appellant's premises by the manager of the Queen City Window Cleaning Company to clean the north and south walls under the direction of Pillar, appellant's manager; that resting against the east wall of the first floor dress shop was a dress case extending from the south wall northerly along the east wall to a point near the north wall, the space between the north wall and the end of the dress case being taken up by a mirror which was set in near the east wall. The dress case is described as being from eight to ten feet high, about thirty inches deep and separated by various wood partitions, and has a top molding on either side of it. It is not clear that the molding was flush with the top of the case, nor that an inspection would have revealed whether it was nailed on to the top of the dress case or was a part of it, but the plaintiff testified that to him it appeared solid. At the top of the north end of the dress case, and on the corner thereof, was a block two and one-quarter inches long and two and one-quarter inches high, but it had the appearance of being merely a continuation of the molding. Schuman and Parr first placed their long board on the top of the dress case containing the partitions. In moving the board along the east wall they stood on the edges of this molding and astride the dress case and pulled the board along, but while cleaning the wall they stood upon the board. Shortly before noon Pillar told Schuman he wanted a spot cleaned on the north wall, and the employee insisted that he could not do the extra work without permission from Mr. Wolman, the Queen City Window Cleaning Com-

pany's manager, since the ticket he had did not call for it. Pillar then stated he would call Schuman's manager regarding it and later reported to Schuman that he had talked with Schuman's manager over the phone, by whom he was directed to tell Schuman to proceed with the extra work, but as a matter of fact no contention is now made by anyone that Pillar did in fact call Wolman concerning extra work. Schuman agreed to clean the spot on the north wall, but suggested they first do the upstairs wall and then he would go to the window cleaning company office and get extra equipment, which he would need to reach the north wall. Pillar objected, stating there were customers on the first floor and he wished to get the workmen from the first floor quickly. He told Schuman he did not want this extra equipment, which Schuman had said he would need, since it would block the entrance to the door. Schuman could not use his board to stand upon in order to reach the north wall, because it would be top-heavy. At this point, according to Schuman's version, Pillar told him to stand on the molding of the show case, from which he could reach the north wall, assuring him and guaranteeing that it would hold his weight. Accordingly, Schuman believing Pillar's representations to be true, placed one of his heels upon the block or molding heretofore referred to, and with his other foot unsupported reached across the open space to the north wall, and while cleaning the part of it directed by Pillar, the section of the molding or block upon which he stood was torn from the dress case, thereby throwing him to the floor, causing his injuries. After it had been torn off, it was discovered that this part of the molding was attached with nails that failed to hold under Schuman's weight. Schuman's version of what took place prior to his injuries was as follows:

"Q. Then you washed from the corner formed by the north wall and the east wall southward on the east wall twice, is that it? A. That is right, when he said it wasn't satisfactory. We went from that corner back again and while we were doing that Mr. Wolman went away. Mr.

Wolman told us to go over it again for Mr. Pillar and Mr. Wolman left and then he (Pillar) said to me, while you are up there I want you to do that little piece up there for me and there is a little piece on the opposite side I want you to clean for me too. I said to him, well, Mr. Pillar, I can't do it until you see Mr. Wolman. He said, I will call Mr. Wolman up, and he went away and he came back and said, Mr. Wolman said you should do whatever I tell you. I said, well, we will go upstairs and finish first and then I will get a jack and then I will do both pieces for you at once, and he said, what do you want with a jack. I said, I will need a jack anyway for that piece over there, because it wasn't no show cases over there. I would have to have this jack and put it up and then climb up and wash it for him. And he said to me, I know what is the matter with you, you are afraid. He said, don't be a sissy; he said, that thing will hold you. You go out on high buildings on window sills. Are you afraid when you do that too? I said to him, no, I am not afraid. He said, you go ahead, don't be a sissy, that thing will hold you. I will guarantee that it will hold you.

"He wouldn't allow me to get no jack and put a board up there. He said he couldn't have it there because it would block the door—the entrance of the door for the customers coming in. I said, can't we lock this door and let them use the other door until I am finished and then when I go over there lock that door and use this entrance. He said, no, I don't want none of that stuff around here. He said, I have too many customers coming in and out of here.

"Q. Now you are positive Mr. Pillar came back and told you he had called Mr. Wolman and arranged for you to do some extra work? A. He came back and told me that he had called Mr. Wolman and Mr. Wolman told him to tell me I should do whatever he says. I asked Mr. Wolman. Mr. Wolman says he never got no call from Mr. Pillar.

"Q. Now, Mr. Pillar, you are sure of this, told you to

stand on that piece of molding which gave away? A. Yes, sir.

"Q. He told you that other men had stood on it? A. Yes, sir.

"Q. He told you that in puting in the air conditioning the men stood on it? A. Yes, sir."

Pillar denied ever having instructed Schuman to clean any part of the north wall, or that he had given him any assurance that the molding at the north end of the dress case was safe for him to stand upon, but this need not be considered by us, since it was a question for the determination of the jury. It may be observed that if the jury believed Schuman's story, this was sufficient to enable them to find that Pillar had assumed control and direction over the work of the employee, Schuman. They could also have found that Pillar negligently represented that the molding would bear Schuman, since it is now admitted that Pillar possessed no information whatsoever that it would bear anyone.

In *McGrath v. Pennsylvania Sugar Co.*, 282 Pa. 265, 127 A. 780, it was held that a principal contractor might be held liable for an injury caused by the interference of himself, or his agents, with the manner of carrying out the work by the employee of the independent contractor, when it amounted to an assumption of control and direction of his labor. And under such circumstances it has also been held in other jurisdictions that the servant who sustained injuries, because relying on the supposed superior knowledge of a party who assumed control over his labor, was not guilty of contributory negligence as a matter of law. *Houston Belt & Terminal Rwy. Co. v. Wolkarte*, Tex. Civ. App., 197 S. W. 1023; *Frey v. Frey Packing Co.*, Mo. App., 260 S. W. 500; *Mama Coal Co. v. Dodson*, 141 Ark. 438, 217 S. W. 475.

In the case last cited it was held that the mere apprehension of danger on the part of the servant did not create an assumption of risk where the servant relied upon an express assurance of the master that the place was safe.

The facts in the case of *Liebold v. Green,* 69 Ill. App. 527, are in some respects similar to those in the case before us. There the plaintiff was employed as a teamster and directed to report to the defendant and follow his instructions. The work consisted in moving a pile driver and engine house, which the servant loaded on his wagon, and was instructed by the defendant to take it to a designated spot. On the trip the plaintiff was alarmed by the shaky condition of the house, stopped his team and asked the defendant to give him a man to drive the lead team in order that the plaintiff could drive the wheel team and walk alongside of the horses. The defendant then replied: "You teamsters are always squawking. That building is safe. You go in there. It can't fall. There might be a board or so to shake off." The plaintiff obeyed, but the building caved in and caused him serious injury. There, as here, the defendant claimed a failure to show primary negligence, but insisted that, even if this had been established, the plaintiff was guilty of contributory negligence preventing recovery. In disposing of those contentions, the court said:

"His right of action is because, under circumstances which made it the duty of the appellant to be governed by the directions of Dorr, he was injured as the result of obedience to orders which Dorr negligently gave.

"Whether it was negligence in Dorr to give the orders —that is, whether in the exercise of such skill as the superintendent of the working of such a plant ought to possess, he carelessly exposed the appellant to peril which his ignorance did not permit him to appreciate, were questions for the jury.

"The appellant might be afraid, and yet upon the assurance of one whom he believed to possess knowledge that he had not, his fears might be dispelled; and acting upon that state of mind his conduct might be without fault on his part.

"If one invite another into danger of which the former ought to be aware, and of which the latter is ignorant, and is under no duty to inquire, and injury follows, respon-

sibility follows. *Fisher v. Jansen,* 30 Ill. App. 91; *Elliott v. Hall,* 15 Law Rep., B. Div. 315."

It may be here observed that Pillar, appellant's manager, testified at the trial to the effect that he had never seen persons standing on the molding at any time, and did not know that it would bear a man's weight, and denied emphatically ever having made the statements concerning the strength of the molding which Schuman stated were made by him, but whether he did in fact make such representations was a jury question. If he falsely made the statements attributed to him and thereby induced Schuman, who relied thereon, to stand upon the molding which tore from the dress case under his weight, it would seem clear upon the authorities cited that no error was committed by the trial court in refusing to withdraw the case from the consideration of the jury, because of the plaintiff's failure to show primary negligence in the defendant. The facts of the case before us are so strikingly dissimilar to those considered by us in *McVey v. Gerrald,* 172 Md. 595, 192 A. 789, as to render the latter decision inapplicable.

In view of all the circumstances attending the case, it seems to the court that the question of contributory negligence on the part of the appellee was one for the jury's determination. There is no showing that the danger of the molding tearing away was obvious to Schuman, and although it is argued that he placed himself in a precarious position, yet it must be admitted that it was the collapse of the molding which caused him to fall and receive his injuries. Since the nature of Schuman's act upon which appellant relies to show contributory negligence can only be determined by a consideration of all the circumstances preceding his injury, the question of his contributory negligence was for the jury to determine. *Cohen v. Herbert,* 145 Md. 195, 125 A. 707; *Consolidated Gas, etc., Co. v. Green,* 137 Md. 503, 511, 113 A. 103; *American Sugar Refining Co. v. Gilbert,* 145 Md. 251, 258, 125 A. 692; *Morgenstern v. Sheer,* 145 Md. 208,

125 A. 790; *Potomac Edison Co. v. State,* 168 Md. 156, 177 A. 163; *Baur v. Calic,* 166 Md. 387, 171 A. 713.

The defendant's first and fourth prayers were granted in connection with each other. By the first, the jury was instructed that if they believe the defendant knew, or by the exercise of ordinary care should have known, that the molding around the show case was not sufficiently strong to bear plaintiff's weight, yet if they believed that the plaintiff had the same or an equal opportunity to ascertain the condition of the molding and whether it was safe to bear his weight, then their verdict must be for the defendant, while its fifth prayer instructed the jury that the mere happening of the accident complained of raised no presumption of negligence on the part of the defendant and, to entitle the plaintiff to recover, the jury must be satisfied by a preponderance of evidence that the defendant was guilty of some specific act of negligence, and that the plaintiff by the exercise of ordinary care on his part could not avoid the consequences of the defendant's negligence, and unless the jury were satisfied that the defendant was guilty of such negligence and that the plaintiff by the use of ordinary care could not have avoided the consequence of the defendant's negligent act, their verdict must be for the defendant. The court also granted another instruction defining "ordinary care." Appellant complains that his first and fourth instructions were granted in connection with each other, and states that by thus combining them he was injured, since one of them related to the plaintiff's exercise of ordinary care, and the other dealt with the burden of proving an alleged assurance of safety given the plaintiff by defendant's manager. This objection we feel is without merit; furthermore, that appellant was in no way injured by granting the instructions in connection with each other, for manifestly, in order to find for the plaintiff, the jurors must at the same time have found both that the plaintiff was not guilty of contributory negligence and have been satisfied that the assurances of safety were given him by Pillar, appellant's manager.

300

The only instruction requested by appellee related to the measure of damages in the event that the jury should find a verdict in his favor. Appellee makes no criticism of the prayer and its form has many times been sanctioned by this court.

Finding no reversible error in the rulings of the trial court, the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*