## LOCAL 75 UNITED FURNITURE WORKERS OF AMERICA, AFL-CIO *v.* JOSEPH REGIEC

[No. 170, September Term, 1973.]

*Decided November 26, 1973.*

The cause was argued before GILBERT, MENCHINE and LOWE, JJ.

*Bernard P. Jeweler,* with whom were *Edelman, Levy & Rubenstein* on the brief, for appellant.

*William L. Clark,* with whom were *Edwin T. Steffy, Jr., Ira K. Himmel* and *Hooper, Kiefer, Cornell & O'Ferrall* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Joseph Regiec's tort action against Local No. 75 United Furniture Workers of America, AFL-CIO, sought recovery

for alleged negligent misrepresentation by its agent and servant. The appellee claimed to have incurred personal liability for hospital bills as a result of those representations following admission to the Mercy Hospital in Baltimore. Trial before a jury in the Superior Court of Baltimore City resulted in verdict and judgment against appellant for $7,346.00.

Appellant's appeal contends:

(a) that no actionable tort was shown by the evidence; and alternatively

(b) that contributory negligence of Regiec bars recovery as a matter of law.

Those issues require us to assume the truth of all evidence in the case tending to sustain the claim as well as all inferences of fact reasonably and fairly deducible therefrom. *Smack v. Whitt,* 249 Md. 532, 536, 240 A. 2d 612, 615; *Buchanan v. Galliher,* 11 Md. App. 83, 87, 272 A. 2d 814, 817.

On November 5, 1970, acute illness caused appellee to be taken to the Emergency Room of the Mercy Hospital. Prior to full admission, hospital authorities, to assure collection of its charges, inquired of the appellee whether he had insurance covering the cost of hospitalization. Regiec replied he believed that hospital insurance furnished by his union through his former employer still provided coverage in spite of the fact of layoff from that employment shortly before his illness. He made clear, however, that there was a doubt in his mind whether such benefits were continuing. Regiec had worked for Union Brothers Furniture Company from about October 9, 1969 until his layoff at some unremembered date in October, 1970. The precise term of his employment was uncertain.

It is conceded that under the union insurance policy, hospitalization benefits continued for ninety days after layoff if contributions had been made by appellee for more than twelve months. On the other hand, if contributions had been made for a lesser period, such benefits under the policy would be extended only thirty days after layoff. Ultimately it was shown that his contributions had been made for less

than twelve months and that hospital admission occurred after thirty but before ninety days following layoff. There was evidence that appellee disclosed his uncertainty to hospital authorities and that he also directed that inquiry concerning that uncertainty be made to the union by his brother-in-law, William Langrall.

Langrall testified that he telephoned the union; outlined the facts; was asked to hold the line while one "Dolly" checked; and then was told that Regiec was entitled to hospital benefits.

Henrietta Dougherty, Financial Secretary of Mercy Hospital, testified that records made in the ordinary course of the hospital's business showed that prior to admission she had telephoned the union to resolve the doubt expressed by appellee as to his entitlement to hospital coverage and was told that "Mr. Regiec was covered for semi-private room for 21 days by Mrs. Mangnello."

Mrs. Dalum Mangnello, secretary to the Union Business Manager, handled the union's insurance program. She was fully aware that the length of extended policy coverage after layoff depended entirely upon whether a union member had or had not made contributions to the insurance fund for more than twelve months. She denied that either Langrall or Mrs. Dougherty had made inquiry to her concerning this proposed hospitalization, but acknowledged that in the normal course of her duty, hospitals all over the city daily made inquiries to her whether insurance coverage of union members provided under contracts between the union and employers was in effect as to particular individuals. She testified that when she received such calls it was her practice to "find out what shop is he employed at, then I put the party on hold and I get in touch with the personnel office at that shop and inquire on the status if they were working or if they were fired or if they were laid off. And then I go back to the hospital and I give them verification whatever it is." She also gave the following testimony on direct and cross-examination:

### Direct

"Q Is it a common occurrence that your

determination of whether benefits are receivable is based on layoff status, in other words, is that a common problem that arises in your office, the question of layoff?

A Oh, yes."

### Cross

"Q But if I worked for the hospital I could call you and ask you to confirm coverage and you would put me on hold and check and then come back to me?

A That's the procedure.

Q That's the normal procedure for verifying coverage — a telephone call?

A That's correct."

Mrs. Mangnello conceded that she had documentary sources of information available to her at the union hall that would have disclosed details both of contributions by and layoffs of, union members, but that it was not her practice to refer to such records when inquiries occurred.

The conflict in the testimony, of course, was a matter for the jury and is without significance in this appeal. *Peroti v. Williams,* 258 Md. 663, 267 A. 2d 114; *Little v. Duncan,* 14 Md. App. 8, 17, 284 A. 2d 641, 645.

### *Actionable Negligence*

The question whether negligent, as distinguished from fraudulent, misrepresentations will support an action in tort appears first to have been considered in Maryland in *Donnelly v. Baltimore Trust Company,* 102 Md. 1, 13, 61 A. 301, 306, where the Court of Appeals, following the landmark English case of *Derry v. Peek,* 14 App. Cas. 337, held that a "misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit."

In a later case, *Virginia Dare Stores, Inc. v. Schuman,* 175 Md. 287, 1 A. 2d 897, the question arose where the defendant's agent had represented that it would be safe for

the plaintiff to stand upon an object which then broke under his weight, causing substantial personal injury. The Court said at page 291 [899]:

"It appears from the declaration heretofore referred to that this action is founded upon negligence in misrepresentation. No Maryland case has been found directly upon the subject, but the weight of authority in other jurisdictions seems to be that such action is not necessarily confined to injuries arising from contractural relations; that the action lies for negligent words, recovery being permitted where one relies on statements of another, negligently volunteering an erroneous opinion, intending that it be acted upon, and knowing that loss or injury are likely to follow if it is acted upon."

Appellant suggests that *Johnson v. Maryland Trust Company,* 176 Md. 557, 6 A. 2d 383, tends to support the restrictive effect of the decision in *Donnelly, supra,* and to limit the breadth of decision in *Virginia Dare, supra.* We do not agree. *Johnson,* an equity action, held merely that misrepresentations giving rise to relief in equity must relate to matters of fact and not to matters of expectation or opinion.

*Holt v. Kolker,* 189 Md. 636, 57 A. 2d 287, explicated the decisions in *Donnelly* and *Virginia Dare,* both *supra,* with a manifest broadening of the scope of the decision in the latter. In *Holt* it was said at page 639 [288]:

"In Maryland there can be no recovery in an action for deceit on the ground of negligent misrepresentation. *Donnelly v. Baltimore Trust & Guarantee Co.,* 102 Md. 1, 61 A. 301, following *Derry v. Peek,* L. R., 14 App. Cas. 337. But this Court has held that in an action for personal injury recovery may be had for negligent words where one relies on the statements of another who negligently volunteers an erroneous opinion, intending that it be acted upon and knowing that loss or injury are

likely to follow if it is acted upon. *Virginia Dare Stores v. Schuman,* 175 Md. 287, 297, 1 A. 2d 897. In other jurisdictions there is a diversity of opinion as to the extent and grounds of liability for unintentional misrepresentation. 28 *Columbia L. Rev.* 216; 35 *Yale L. J.* 767; 81 *Univ. of Pa. L. Rev.* 435; 24 *Ill. L. Rev.* 749. In many States, notably New York, *Derry v. Peek* is not followed. However, in New York and other jurisdictions, where such liability has been broadly affirmed, there must be such a relation that one party has the right to rely for information upon the other, and the other giving the information owes a duty to give it with care. It may be possible, as Judge Cardozo was careful to say in *Glanzer v. Shepard,* 233 N. Y. 236, 135 N. E. 275, 23 A. L. R. 1425, that one who follows a common calling may come under a duty to another whom he serves, though a third may give the order or make the payment; but the casual response, made in mere friendliness or courtesy, may not stand on the same plane as the deliberate certificate intended to sway conduct."

Up to and including the decision in *Holt,* Maryland decisions affirming recovery for negligent misrepresentations had involved personal injuries stemming from such misrepresentations.

However, in *Piper v. Jenkins,* 207 Md. 308, 113 A. 2d 919, the misrepresentations related to a lot boundary and an assertion that an attractive garden lay within it. The Court of Appeals again reviewed prior cases, and said at page 312 [921]:

"In the United States there is a diversity of opinion as to liability for unintentional misrepresentation. In many States, including New York, *Derry v. Peek* has not been followed. But in New York and the other States where liability for unintentional misrepresentation has been broadly affirmed, there must be such a relationship that

one party has a right to rely for information upon the other, who owes a duty to give it with care. *Glanzer v. Shepard*, 233 N. Y. 236, 135 N. E. 275, 23 A. L. R. 1425.

The Maryland Court of Appeals, following the decision in *Derry v. Peek*, has held that a false statement of fact made by a person honestly with a belief in its truth, and relied upon by the person to whom it is made, does not constitute such fraud as will support an action for deceit. *Donnelly v. Baltimore Trust & Guarantee Co.*, 102 Md. 1, 61 A. 301; *Holt v. Kolker*, 189 Md. 636, 639, 57 A. 2d 287. It has been held, however, that an action will lie for personal injury resulting from reliance upon statements which negligently volunteer an erroneous opinion made with intention that it be acted upon and with knowledge that injury would likely result if acted upon. *Virginia Dare Stores v. Schuman*, 175 Md. 287, 1 A. 2d 897.

We hold that a purchaser of land has a right to rely upon representations made to him by the vendor as to its location when the facts concerning which the representations are made are unknown to the purchaser; and the vendor can be held liable for damages if he makes a false representation as to its boundaries with knowledge of its falsity or with reckless disregard for its truth or falsity, and the purchaser relies upon it."

This distinct extension of *Virginia Dare, supra*, was followed by *Brack v. Evans*, 230 Md. 548, 187 A. 2d 880. The latter involved a two-count declaration, the first alleging fraudulent misrepresentations, and the second mere negligent misrepresentation relating to corporate stocks. Demurrer to the fraud count was sustained because it "pleaded no facts from which the existence of fraud could be inferred" but was overruled as to the second count because negligent misrepresentations are sufficient to warrant trial on the issue of negligence. *Virginia Dare Stores v. Schuman*, *supra*, is cited to support the decision.

In the subject case the appellant chose to establish procedures whereby inquiry was invited and answers given with the clear knowledge that such advice would be acted upon to sway the conduct of the inquirer. There was testimony that the appellee acted upon that response to his damage, in that he was caused to incur personal responsibility for expenses at the Mercy Hospital and but for such representations he could and would have received similar benefits without charge from a Veterans Hospital.

Appellant contends that the negligent misrepresentation was one of law and not of fact and from that premise contends that misrepresentations of law are not actionable. In the subject case no legal interpretation of the insurance contract was either sought or given. Unambiguous contract terms were such that appellant's agent was required only to make a simple factual determination whether the appellee had or had not made contributions to the insurance fund for more than twelve months. There was evidence to show that appellant's employee, acting within a conceded area of responsibility, had made representations that necessarily would have been understood as declaring that such contributions had been made for more than twelve months. We hold that the representation was one of fact.

Decisions on cases cited by appellant that were bottomed upon alleged misrepresentations of law are inapposite. We emphasize that the question whether negligent misrepresentations of law, acted upon to one's damage, will support a negligence action is not reached.

We hold that actionable negligence has been shown.

## Contributory Negligence

Appellant contends that appellee's loss of the pamphlet setting forth the "United Furniture Workers Benefit Program" and his failure to examine its provisions, bars his recovery as contributory negligence as a matter of law. The pamphlet itself, as heretofore stated, would have disclosed nothing more to him than that he was covered for hospitalization benefits if he had made contributions for more than twelve months and not covered if made for a

lesser number. He would, in short, have been required to make precisely the same inquiry to the union whether he had read the pamphlet or not. No contributory negligence has been shown.

*Judgment affirmed.*
*Costs to be paid by appellant.*